Filed 5/30/13  P. v. Gonzalez CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>GINGER LINDSAY GONZALEZ,<br><br>    Defendant and Appellant. | B244477<br><br>(Los Angeles County<br>Super. Ct. No. BA395145) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Frederick N. Wapner, Judge.  Affirmed.  Remanded with directions.

Jennifer Hansen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr., Deputy Attorney General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Defendant Ginger Lindsay Gonzalez was convicted by jury of possession for sale of cocaine base (Health & Saf. Code, § 11351.5 (count 1)), transporting cocaine base (Health & Saf. Code, § 11352, subd. (a) (count 2)), possession for sale of methamphetamine (Health & Saf. Code, § 11378 (count 3)), and transporting methamphetamine (Health & Saf. Code, § 11379, subd. (a) (count 4)).  In a separate proceeding she admitted suffering a prior narcotics conviction (Health & Saf. Code, § 11370.2, subd. (a)).  Defendant was sentenced to the low term of three years in county jail on count 1, plus a consecutive three-year term for the prior conviction, for a total term of six years.  The trial court also imposed a concurrent two-year sentence on count 3, and imposed but stayed sentences on the remaining counts pursuant to Penal Code section 654.[1]  Various fines and court fees were imposed and defendant was awarded 34 days of presentence custody credit.

Defendant contends that the trial court abused its discretion in admitting the underlying facts of the prior drug conviction.  We disagree and affirm the judgment.  We remand with directions to amend the abstract of judgment.

## FACTS

**A.    Prosecution case**

**1.    Current incident**

On March 14, 2012, at approximately 5:30 p.m., Los Angeles County Deputy Sheriff Jesus Mora and his partner Deputy Yoshida were on patrol in a marked police vehicle in East Los Angeles, when Deputy Mora saw a white Jeep Grand Cherokee fail to stop at a stop sign and make an unsafe left turn.  The deputies made a U-turn and followed the Jeep until they were approximately five feet behind it.  Before initiating a traffic stop Deputy Mora was able to determine there were four occupants of the Jeep.  Through the rear window of the Jeep, Deputy Mora saw defendant, the driver, reach back

---

[1]    All further statutory references are to the Penal Code unless otherwise stated.

2

"and hand over a brown case to the rear passenger of the vehicle."[2]  After making the traffic stop, Deputy Mora approached the Jeep on the passenger side.  The front and rear windows were down and Deputy Mora saw the rear passenger Gamez concealing plastic bags in the magazine pocket attached to the back of the front passenger seat.

Defendant and the three passengers were detained while the deputies searched the Jeep.  Deputy Mora recovered four plastic bags from the pocket of the passenger seat, two contained cocaine base, and two contained methamphetamine.  Deputy Mora also searched defendant's purse and recovered a piece of paper with names and numbers on it, which he described as a "pay-and-owe" sheet used to keep track of money paid or owed for illicit drugs.  Two cell phones that were continuously ringing were also recovered from defendant's purse.  An open brown sunglass case which Deputy Mora testified he saw defendant pass to Gamez, was found on the floorboard of the Jeep where Gamez was seated.  None of the occupants of the Jeep appeared to be under the influence of drugs and no drug paraphernalia was found inside the vehicle.

Los Angeles County Sheriff's Department Criminalist Warren Michael Best testified that two of the plastic bags recovered from the Jeep contained cocaine base; one bag weighed 10.62 grams and the other weighed 13.19 grams.  The other two bags recovered contained methamphetamine; one bag weighed 23.7 grams, and the other weighed 23.8 grams.  Detective Enrique Rosado of the Los Angeles County Sheriff's Department testified as a narcotics expert.  Based on his education, training and experience in narcotics, Detective Rosado opined the cocaine base and methamphetamine recovered from defendant's Jeep was possessed for sale because (1) the amount of illicit drugs recovered was "way over the amount for personal use"; (2) the cell phones continuously ringing were indicative of "worried" customers "trying to get a hold of [defendant]"; and (3) the document referred to as a pay-and-owe sheet recovered from defendant's purse was a record of earnings from the illicit drugs.

---

[2]     The passenger was later identified as Tom Christopher Christian Gamez, a codefendant at trial, who is not a party to this appeal.

3

### 2. Prior incident

Detective Rosado testified that in June 2008, defendant who was under surveillance, was observed engaging in numerous "hand-to-hand narcotic transactions." Defendant drove "around the city . . . all day long" and exchanged narcotics for money with individuals that came to her car. On June 12, 2008, Detective Rosado served a search warrant on defendant's residence and recovered two plastic baggies containing rock cocaine, a digital scale, a cell phone, and about $294 in cash. Testing determined the baggies contained 22.7 grams of cocaine in base form. No drug paraphernalia was found at defendant's residence. Defendant was convicted of possession for sale of cocaine base in violation of Health and Safety Code section 11351.5.

## B. Defense case

Defendant testified that on March 14, 2012, her Jeep needed a tune-up and she picked up her friend Mike Hoffman whose friend Gamez knew a mechanic named Mike Lopez. Defendant then picked up Gamez and Lopez who were seated in the back of the Jeep when defendant was pulled over by deputies Mora and Yoshida. Defendant owned the Jeep since 2010. The rear windows were tinted; however, the front windows were not tinted. There were mechanical problems with the rear windows; they did not go down.

Defendant told Deputy Yoshida that she was on parole "for narcotics." She knew that she was subject to search and seizure and would get in trouble if drugs were found in her car. The drugs found by Deputy Mora did not belong to her and she did not know that anyone in the car had drugs that day. Her sunglasses case was empty because she was wearing her sunglasses and she never passed anything to Gamez in the rear passenger seat.

Defendant testified one of the cell phones found in her purse could not have been ringing on March 14 because it was not operable and she kept it as a "play phone" for her children. Defendant explained the note found in her purse had nothing to do with drugs. The names listed on it were female parolees she met while in custody and hoped to

4

contact again.  The numbers listed on the note represented a score sheet for a dice game she played with her roommates.

On cross-examination, defendant admitted the packaging of the drugs found in the Jeep looked like the drugs found at her house in 2008, the amount of cocaine base recovered from the Jeep was a similar weight to that found in her house in 2008, and in the past she used a cell phone to conduct business with her drug buyers.

## DISCUSSION

### I.      Defendant's Prior Conviction for Possession of Cocaine Base for Sale

Defendant contends that the trial court abused its discretion and violated her due process rights to a fair trial by admitting evidence of her prior conviction for drug sales.

Prior to trial, the People filed a motion under Evidence Code section 1101 to admit evidence of defendant's prior conviction for violating Health and Safety Code section 11351.5.  The motion set forth the facts of the prior conviction, which was substantially the same as the evidence presented at trial.  The 2008 search of defendant's home produced 22.7 grams of cocaine, a digital scale, a cell phone, and an envelope containing empty plastic baggies.  At the hearing on the motion the prosecutor argued the evidence was relevant to prove defendant's knowledge and her intent to sell.  Defendant argued it was propensity evidence and irrelevant under Evidence Code section 1101, subdivision (a), and was unduly prejudicial and should be excluded.

The trial court ruled that the evidence of the prior conviction was relevant to prove intent to sell cocaine, and to show knowledge that what was possessed was in fact cocaine.  Further, it was not offered to show propensity.  The court concluded the evidence was not overly prejudicial under Evidence Code section 352.

At the close of trial, the jury was instructed pursuant to CALCRIM No. 375 that if it found the prosecution had proven the prior offense by a preponderance of the evidence, it could "consider that evidence for the limited purpose of deciding whether or not:  [The defendant acted with the intent to sell]" and whether she "knew the nature of the controlled substance alleged" in this case.  The evidence was to be considered only for

5

the limited purpose of determining defendant's credibility and the jury was cautioned against concluding that defendant had a bad character or was disposed to commit crimes.

The prior conduct evidence was relevant. Evidence possessing any tendency in reason to prove or disprove any disputed material fact is relevant and admissible. (Evid. Code, §§ 210, 351; *People v. Garceau* (1993) 6 Cal.4th 140, 177.) The trial court is vested with wide discretion in determining the relevancy of evidence. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124–1125.) The relevancy of prior drug convictions in a case involving another charge of drug possession is certainly relevant.

However, even relevant evidence can be excluded. Evidence Code section 1101, subdivision (a) generally prohibits the admission of evidence of a person's character or a trait of his or her character when offered to prove his or her conduct on a specified occasion. Evidence Code section 1101, subdivision (b), however, provides that evidence of a person's prior criminal act is admissible "when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge . . .) other than his or her disposition to commit such an act."

By pleading not guilty, defendant placed in issue all of the elements of the charged offenses. (*People v. Roldan* (2005) 35 Cal.4th 646, 705–706, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.) The prior crime which involved a similar amount of cocaine being sold in numerous transactions from a vehicle driven by defendant, was substantially similar to the instant crime and properly admitted to show defendant possessed the same intent in this case, and was well aware of the illegal nature of the cocaine. Thus, the evidence was properly admitted to show intent, motive, absence of mistake, and knowledge under Evidence Code section 1101, subdivision (b).

In addition, the evidence was admissible under Evidence Code section 352. "'Under Evidence Code section 352, the trial court enjoys broad discretion in assessing whether the probative value of particular evidence is outweighed by concerns of undue prejudice, confusion or consumption of time. [Citation.]' [Citation.] A trial court's

6

discretionary ruling under Evidence Code section 352 will not be disturbed on appeal absent an abuse of discretion. [Citation.]" (*People v. Lewis* (2001) 26 Cal.4th 334, 374.) Prejudicial evidence is evidence that tends to evoke an emotional bias against the defendant. (*People v. Barnett* (1998) 17 Cal.4th 1044, 1118.) "A trial court abuses its discretion when its ruling 'falls outside the bounds of reason.' [Citation.]" (*People v. Wesson* (2006) 138 Cal.App.4th 959, 969.)

Here, the prior conduct was clearly probative to contested issues in this case as the prior conviction had similarities to the offense in the instant case. Similarity between the offenses increases its probative value. (*People v. Balcom* (1994) 7 Cal.4th 414, 427.) Additionally, the evidence was not more prejudicial than the facts of the instant case. Here, in addition to being found with a similar amount of cocaine as in the prior case, defendant also possessed 47.5 grams of methamphetamine for sale. The jury was also informed as to the prior conviction that defendant "paid her debt to society" ensuring that the jury would not convict her in the instant case to punish her for the other offenses. (See *Ibid.*) We cannot say the trial court abused its discretion by admitting the underlying facts of the 2008 prior conviction.

Even if we were to assume that the trial court erred by admitting the prior convictions, any error was harmless because it is not reasonably probable that the jury would have reached a more favorable result had the challenged evidence been excluded. (*People v. Carter* (2005) 36 Cal.4th 1114, 1152; *People v. Watson* (1956) 46 Cal.2d 818, 836.) The jury was admonished that the evidence of the prior convictions was admitted for a limited purpose and could not be considered to show defendant's propensity to commit the instant crimes. We presume the jury followed the court's instructions. (*People v. Boyette* (2002) 29 Cal.4th 381, 436.)

## II. Abstract of Judgment

The People contend—and defendant does not dispute—that the trial court erred in calculating and imposing the laboratory analysis fees and the penalty assessments and surcharges. We agree.

At the sentencing hearing, the court ordered the following fees and penalties as relevant to this discussion: "You have to pay a $50 laboratory fee; $100 in penalty assessments on the laboratory fee." The minute order entered following the sentencing hearing, reflects the court's imposition of a $50 lab analysis fee "plus $145.00 penalty assessment and $10.00 criminal surcharge." The abstract of judgment omits any reference to fees imposed.

The use of the term penalty assessment reflects the trial court's intent that the mandatory penalties and surcharge be added to the drug laboratory fee. (*People v. Voit* (2011) 200 Cal.App.4th 1353, 1372–1373.) "In Los Angeles County, trial courts frequently orally impose the penalties and surcharge . . . by a shorthand reference to 'penalty assessments.' The responsibility then falls to the trial court clerk to specify the penalties and surcharge in appropriate amounts in the minutes and, more importantly, the abstract of judgment. This is an acceptable practice." (*People v. Sharret* (2011) 191 Cal.App.4th 859, 864.)

The $50 laboratory analysis fee triggers the mandatory imposition of the following penalty assessments and surcharge in Los Angeles County: $50 for a state penalty under Penal Code section 1464, subdivision (a)(1); $35 for a county penalty pursuant to Government Code section 76000, subdivision (a)(1); $10 for a state surcharge under Penal Code section 1465.7, subdivision (a); $15[3] for a state court construction penalty pursuant to Government Code section 70372, subdivision (a)(1); $10 for an emergency medical services penalty pursuant to Government Code section 76000.5, subdivision (a)(1); $5 for a deoxyribonucleic acid penalty pursuant to Government Code section 76104.6, subdivision (a)(1); and $15 for a state-only deoxyribonucleic acid penalty pursuant to Government Code section 76104.7, subdivision (a). The total

---

[3]     The state court construction penalty is $3 for every $10 of fine or penalty in Los Angeles County. (*People v. McCoy* (2007) 156 Cal.App.4th 1246, 1254.)

assessments are $140 for a total of $190. (*People v. Sharret, supra,* 191 Cal.App.4th at pp. 863–864.)

The criminal laboratory analysis fee and assessments as to each count[4] would total $760; but a count that has been stayed under Penal Code section 654 is not a "separate offense" because it involves conduct that is identical to or indivisible from another crime for which the defendant has already been punished. A statute need not expressly refer to section 654 to override the proscription against multiple punishment (see *People v. Benson* (1998) 18 Cal.4th 24, 31–33), but the requirement of a fee for "each separate offense" does not clearly signify that an exception to the general rule was intended. (See also *People v. Sharret, supra,* 191 Cal.App.4th at pp. 865–870.) Therefore, since the sentences on counts 2 and 4 were stayed the corresponding fees and assessments must also be stayed.

Lastly, the court below was required to impose an assessment under Government Code section 70373, subdivision (a)(1)[5] in the amount of $30 for each of the four felonies of which defendant was convicted, for a total assessment of $120. The abstract of judgment must be amended to so reflect. Upon remittitur issuance, the trial court is directed to prepare an amended abstract of judgment that correctly reflects the penalty

---

[4] Health and Safety Code section 11372.5 provides in pertinent part: "(a) Every person who is convicted of a violation of Section . . . 11351.5, 11352, . . . 11378, . . . 11379 . . . shall pay a criminal laboratory analysis fee in the amount of fifty dollars ($50) for each separate offense. . . ."

[5] Government Code section 70373 provides in part: "To ensure and maintain adequate funding for court facilities, an assessment shall be imposed on every conviction for a criminal offense, including a traffic offense, except parking offenses as defined in subdivision (i) of Section 1463 of the Penal Code, involving a violation of a section of the Vehicle Code or any local ordinance adopted pursuant to the Vehicle Code. The assessment shall be imposed in the amount of thirty dollars ($30) for each misdemeanor or felony and in the amount of thirty-five dollars ($35) for each infraction." (Gov. Code, § 70373, subd. (a)(1).)

9

assessments and surcharge set forth above. (*People v. Chan* (2005) 128 Cal.App.4th 408, 425–426.)

## DISPOSITION

The judgment is affirmed. Upon remittitur issuance, the clerk of the superior court shall prepare an amended abstract of judgment that includes the penalties and surcharge set forth in the body of this opinion. The clerk shall forward the amended abstract of judgment to the California Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J. *
                FERNS

We concur:


_____, Acting P. J.
        ASHMANN-GERST


_____, J.
        CHAVEZ


---

*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.